**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXANDER GARCIA PENATE,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:26-1798** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSICA SAGE, *et al.*,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Pending before the court is petitioner Alexander Garcia Penate's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Garcia's petition will be **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Petitioner Alexander Garcia Penate is a citizen of Cuba. (Doc. 7-2). He entered the United States on July 6, 2006, at Miami, Florida. (Doc. 7-2). That same day, he was granted legal permanent resident status. *Id.* Since arriving in the United States, Garcia has been convicted of aggravated assault with a deadly weapon and possession with intent to sell cocaine. *Id.*

On April 27, 2023, Garcia was picked up by Immigration and Customs Enforcement ("ICE") officers at the Davidson County Sheriff's Office in Tennessee. *Id.* That same day, a Notice to Appear was issued, charging him

as removable under §237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because of his prior criminal convictions. (Doc. 7-3). On June 9, 2023, Garcia was ordered removed by an immigration judge. *See* (Doc. 7-7 at 3). However, on July 6, 2023, he was released from immigration custody on supervision. *See* (Doc. 7-7).

On April 9, 2026, Garcia was served with a notice of revocation of release, notifying him that he violated a condition of his release by recently being arrested for drugs and firearms offenses. (Doc. 7-7). The notice also informed Garcia that the Government was seeking to deport him to Mexico, that Cuba has been issuing limited travel documents, and that he would be provided an opportunity to respond to the reasons for the revocation. *Id.*

On April 30, 2026, Garcia was served with a notice of removal to Mexico. (Doc. 7-8). Finally, on May 11, 2026, Garcia participated in a third country screening, where USCIS determined that he did not meet his burden to establish relief from removal to Mexico. (Doc. 7-9).

On June 29, 2026, Garcia filed the present petition for habeas corpus. (Doc. 1). That same day, the court dismissed several claims raised in the petition and ordered Respondents to respond only to those claims concerning Garcia's continued detention and the conditions of his confinement. (Docs. 4, 5). On July 13, 2026, Respondents filed their

response to the petition. (Doc. 7). On July 29, 2026, Garcia filed a reply to their response. (Doc. 8). Thus, the petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have

jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland

Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Garcia is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six

months of detention to noncitizens held beyond the 90-day removal period set by §1231).

**c. Merits**

Garcia argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals

could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, while Garcia has been subject to a final order of removal for approximately three years, the Government released him under supervision rather than effectuate his deportation. He was then not in ICE custody until April 9, 2026, following revocation of his release for failure to comply with conditions thereof. Thus, the time before April 9, 2026, does not factor into the court's consideration of the length of his detention. Garcia has been detained for less than four months, which is presumptively reasonable. Moreover, there is not yet any reason to believe he will not be deported in the reasonably foreseeable future.

The court notes, however, that Garcia may file subsequent habeas petitions if it turns out that his detention does, in fact, become unreasonably prolonged.

## IV. CONCLUSION

For the foregoing reasons, Garcia's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED WITHOUT PREJUDICE**. An appropriate order shall issue.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 31, 2026**
26-1798-01